# IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

DAVID DESIR,     )
          )
 Petitioner,    )
          )
 v.        )  **Case No. CIV-26-614-R**
          )
MARKWAYNE MULLIN, et al.,  )
          )
 Respondents.   )

## REPORT AND RECOMMENDATION

Petitioner David Desir, a citizen of Haiti proceeding *pro se*,[1] filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[2] (Doc. 1).[3] United States District Judge David L. Russell referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 5). In accordance with the expedited briefing schedule, (Doc. 8), Respondents timely filed a response.[4] (Doc. 9).

---

[1] A *pro se* litigant's pleadings are liberally construed "and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But the court cannot serve as Petitioner's advocate, creating arguments on his behalf. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[2] Petitioner is housed at Cimarron Correctional Facility in Cushing, Oklahoma. (Doc. 2, at 4).

[3] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[4] The response was not filed on behalf of Respondent Scarlet Grant, Warden of the Cimarron Correctional Facility, because she is not a federal official. (Doc. 9, at 1; *see* Doc.

1

Petitioner filed an untimely reply. (Doc. 11). As fully set forth below, the undersigned recommends that the Petition be **GRANTED** in part. Petitioner is entitled to a bond hearing that comports with due process. Accordingly, the Court should order Respondents to provide Petitioner with a bond hearing at which the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk and/or a danger to the community in order to justify continued detention.

## I.    Introduction to the Immigration and Nationality Act

The two sections of the Immigration and Nationality Act ("INA") at issue are 8 U.S.C. § 1225 and § 1226. Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13). Under § 1225(b)(2)(A), "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a." (Emphasis added). In other words, if Petitioner is an "applicant for admission" and "seeking admission" under § 1225(b)(2)(A), he must be detained and is not entitled to a bond hearing while he awaits removal proceedings.

---

10, at 1). The undersigned concludes that a separate response from Warden Grant is not necessary to resolve this matter.

On the other hand, § 1226(a) grants ICE the discretion to continue detention of an alien or to release the alien on bond. 8 U.S.C. § 1226(a). The regulations accompanying the statute explain the various levels of review for this determination. An ICE officer makes the initial detention or release determination, and the alien bears the burden of "demonstrat[ing] to the satisfaction of the officer that . . . release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). If the officer determines the alien should be detained, the alien can seek review of that decision at a bond hearing before an immigration judge. *Id*. § 236.1(d)(1). An immigration judge's decision to detain may be further appealed to the Board of Immigration Appeals ("BIA"). *Id*. § 236.1(d)(3). *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

## II.    Factual Background

Petitioner is a citizen of Haiti who was admitted into the United States as a non-immigrant on a B-2 travel visa on or about August 7, 2016. (Doc. 9, at 3-4; *id.* at Ex. 1, at 1). Petitioner's travel visa expired on February 6, 2017. (Doc. 9, at 4; *id.* at Ex. 1, at 1).

On January 14, 2026, ICE instituted removal proceedings against Petitioner through issuance of a Notice to Appear ("NTA"), alleging he was a non-citizen admitted to the United States but removable based on his overstay in the country pursuant to 8 U.S.C. § 1227(a)(1)(B). (Doc. 9, at Ex. 1, at 1). On March 12, 2026, ICE detained Petitioner after

a traffic stop.  (Doc. 9, at 4).  Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal.  (*Id.*; *see id*. at Ex. 2. At 3).

Petitioner asserts that he is entitled to, but has not received, a bond hearing.  (Doc. 1, at 6).  Respondents assert that Petitioner is subject to mandatory detention under § 1225(b)(2)(A).  (Doc. 9, at 2-3).  Petitioner's removal proceeding is ongoing.  (*See id*. at 5); *see* EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited June 2, 2026) (next hearing scheduled for June 23, 2026).

### III.    Petitioner's Claims and Respondents' Responses

Petitioner asserts two Counts that are virtually identical.  In Count I, Petitioner contends he is being "held without any preliminary or probable cause hearing" before an immigration judge.  (Doc. 1, at 6).  Liberally construed, this is the same as his Count II, which states Petitioner has "not been issued a bond [hearing] or an opportunity to post a bond."  (*Id.*)  As support, Petitioner states he is entitled to a bond hearing and that such a hearing is "a Due Process Right."  (*Id.* at 9).  As relief Petitioner requests "to be released on bond pending outcome of deportation proceedings."  (*Id.* at 7).

Respondents contend that Petitioner is lawfully detained under § 1225(b)(2)(A) and that Petitioner's due process claim is premature and baseless. (*See generally* Doc. 9).

In his untimely Reply, Petitioner argues, *inter alia*, that his detention is governed by § 1226(a), that he was improperly arrested without a warrant, and that under the *Mathews* factors, due process requires either his immediate release or a bond hearing at which ICE

would bear the burden of proof to establish flight risk or dangerousness in order to justify his continued detention. (Doc. 11).

## IV.    Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## V.    Analysis

### A.    Petitioner Is Plainly Detained Pursuant to § 1226(a), not § 1225(b)(2)(A).

Respondents make the truly remarkable assertion that Petitioner is detained under § 1225(b)(2)(A) because he "is an applicant for admission." (Doc. 9, at 3-5). This statement is remarkable because Petitioner, by Respondents' own admission and documentation, "was admitted" into the United States on a travel visa. (*Id.* at 4; *id.* at Ex. 1, at 1). Respondents provide no analysis attempting to explain how Petitioner is simultaneously an "applicant for admission" and someone who was admitted into the country. Because Petitioner is plainly not an applicant for admission, § 1225 does not apply to him; rather, he is subject to § 1226(a). *See Repela v. Ice Field Office Director*, No. 26-cv-552-CNS, 2026 WL 776123, at *3 (D. Colo. Mar. 19, 2026) ("Petitioner's Notice to Appear charged him with being deportable from the United States under 8 U.S.C. § 1227(a)(1)(B) because Petitioner is a noncitizen who remained in the United States after his B-2 visa expired. In connection with those charges, Petitioner" may only be "detained pursuant to 8 U.S.C.

§ 1226(a)."); *Amadu S.S. v. Bondi*, No. 26-1637, 2026 WL 1231249, at *1 (D. Minn. Mar. 3, 2026) ("This case asks whether Respondents may detain a noncitizen under 8 U.S.C. § 1225(b)(2) if the noncitizen entered the United States on a B-2 Visa and was later arrested within the country's borders.  The answer is no."); *Jennings*, 583 U.S. at 288-89 ("Section 1226 generally governs the process of arresting and detaining [noncitizens subject to § 1227(a)] pending their removal.").

Respondents' detention of Petitioner under § 1225, which denied him the opportunity for a bond hearing, violates the INA.  Thus, Petitioner has shown that he is in custody in violation of the laws of the United States, and he is entitled to habeas relief.  28 U.S.C. § 2241(c)(3).

**B.    Petitioner's Detention Without a Bond Hearing Also Violates Procedural Due Process.**

Petitioner alleges that denying him consideration for bond violates his due process rights.  (Doc. 1, at 9).  The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V  It is well established that the Due Process Clause applies to non-citizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  Courts examine procedural due process claims in two steps: (1) is there a protected liberty interest, and (2) if so, what procedures are necessary to ensure deprivation of that protected liberty interest accords with due process. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "Freedom from imprisonment — from government custody, detention, or other forms of

6

physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

As a non-citizen facing discretionary detention or release while removal proceedings are pending, (1) Petitioner has a liberty interest in freedom from immigration detention, and (2) it is necessary to afford him the opportunity to be heard regarding his release to ensure that any deprivation of that protected liberty interest accords with due process.  The bond hearing process codified at § 1226(a) and its related regulations provides such an opportunity to be heard.  Thus, Petitioner's procedural due process rights have been violated by Respondents' decision to detain him under § 1225 without a bond hearing.  As articulated by a district court of this Circuit:

> Because this Court holds that § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ [immigration judge].  Having erroneously concluded that Petitioner was mandatorily detained under § 1225, the IJ in Petitioner's case declined to make an individualized assessment of whether Petitioner posed any danger to the community, threatened national security, or was at risk of flight. Thereafter, Petitioner's continued detention without the bond hearing that should have been provided to him pursuant to § 1226 constitutes an ongoing violation of his constitutional right to due process.

*Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025) (internal citation omitted); *see also Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1282 (D.N.M. 2026) ("Because Petitioner is subject to § 1226's discretionary detention provision rather than mandatory detention under § 1225, he is entitled to a bond hearing.  Classifying Petitioner under § 1225 has thus deprived him of due process by denying him the opportunity to be heard at such a hearing.") (citations omitted); *Facio v. Baltazar*, No. 25-CV-03592-CYC,

2025 WL 3559128, at *3 (D. Colo. Dec. 12, 2025) ("[T]he Court agrees with other courts that have, against substantially similar factual backgrounds, concluded that detention without a bond hearing amounts to a due process violation.  After all, the facts clearly demonstrate that [the petitioner] was entitled to more process than he received pursuant to § 1226(a) and its implementing regulations.") (citation modified); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. Aug. 29, 2025) ("[T]he Court has specifically held that Section 1226(a) governs Lopez-Campos' detention, therefore the process due to him is that which is afforded under Section 1226(a). The discretionary bond framework under Section 1226(a) requires a bond hearing to make an individualized custody determination – a hearing the IJ did not conduct.  Therefore, without first evaluating Lopez-Campos' risk of flight or dangerousness, his detention is a violation of his due process rights."), *aff'd*, 2026 WL 1283891, at *13 ("find[ing] no reason to disturb" the district courts' holdings "that the government's detention of Petitioners without bond under § 1226(a) was a deprivation of liberty that violated Petitioners' due process rights").

### C.    Petitioner Is Entitled To a Bond Hearing that Comports With Due Process.

It is clear that Petitioner, now properly classified under § 1226(a), has the statutory and Constitutional right to seek his release through all the opportunities set forth in the INA and its regulations.  To date, he has not been provided with a bond hearing before an immigration judge, and this Court's grant of habeas relief should order such a hearing to take place.  In his Reply, Petitioner requests that if the Court orders a bond hearing it should further order that ICE be required to carry the burden of proof to establish flight risk or

danger to the community to justify his continued detention. (Doc. 11, at 15). Indeed, the undersigned finds that ordering a bond hearing, without more, does not ensure that Petitioner will receive complete and meaningful habeas relief. If the procedures used in the hearing are insufficient to protect non-citizens from erroneous deprivations of liberty, merely ordering a bond hearing will lead to further violations of their due process rights. The Court must investigate what it means to receive a § 1226(a) bond hearing as administered by immigration judges under current BIA precedent, specifically as to the burden and quantum of proof, in order to determine whether those procedures comport with due process.

The Court is not acting beyond its jurisdiction or its authority in making such an inquiry. First, even though under the INA, "a district court has no jurisdiction to consider a habeas petitioner's challenge to the decision to either grant or deny bond," *Kumar v. De Anda-Ybarra*, No. CIV-26-164-R, 2026 WL 753944, at *2 (W.D. Okla. Mar. 17, 2026) (citing 8 U.S.C. § 1226(e)), the Court retains "habeas jurisdiction over constitutional claims or questions of law" relating to the bond hearing. *Hernandez Casallas v. Jones*, No. CIV-26-53-J, 2026 WL 324646, at *2 (W.D. Okla. Feb. 6, 2026). *See Demore v. Kim*, 538 U.S. 510, 517 (2003) (The "clear text [of § 1226(e)] does not bar respondent's constitutional challenge . . . ."). Second, Congress has granted courts the authority to "summarily hear and determine the facts" when considering an application for a writ of habeas corpus and to "dispose of the matter as law and justice require." 28 U.S.C. § 2241. And the Supreme Court has advised that "[t]he very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach

9

are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 291 (1969); *see also Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (observing that habeas is "an adaptable remedy" and "its precise application and scope change[s] depending upon the circumstances"); *Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("[H]abeas corpus is, at its core, an equitable remedy."); *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (holding that federal courts have "broad discretion in conditioning a judgment granting habeas relief").

As set forth fully below, the undersigned finds that bond hearings as they are currently administered by ICE do not comport with due process and that substitute procedures should be ordered, namely shifting the burden of proof to the Government to justify a non-citizen's detention.[5]

---

[5] *But see Singh v. Grant*, No. CIV-26-279-J, 2026 WL 1035100, at *2 (W.D. Okla. Apr. 16, 2026) (finding the issue of burden shifting "premature" and "not ripe for adjudication" because "[a]t this point in time, no immigration judge has conducted a bond hearing in Petitioner's case, much less allocated the burden of proof or applied the particular facts of this case to that evidentiary framework. Accordingly, the Court declines to issue an advisory opinion instructing the Immigration Judge to apply a particular burden of proof."); *Singh v. Figueroa*, No. CIV-26-600-R, 2026 WL 1181699, at *1 n.2 ("[T]he Court declines to specify or alter the burden of proof at this stage.") (citation omitted).

Petitioner requested that the burden of proof be shifted to the Government in an untimely Reply, (Doc. 11). While some courts find that this is a waiver of the issue, *see Singh*, 2026 WL 1035100, at *2, the Petition did assert that detention without a bond hearing is a violation of Petitioner's due process rights. (Doc. 1, at 9). Basic fairness requires that all non-citizens who are entitled to a bond hearing should receive the same sort of bond hearing – one that comports with due process. Granting burden shifting to only those Petitioners who explicitly or properly request it, while granting a bond hearing under the ordinary procedures of § 1226(a) to those who do not, would create inconsistent results for similarly situated non-citizens.

### 1.    Bond Hearings Under Current BIA Precedent

Section 1226(a) does not specify who bears the burden of proving a non-citizen's

eligibility for bond or what burden of proof applies.  Indeed, the only place in which the

burden is addressed is in the regulation pertaining to the custody determination by the

arresting ICE officer, 8 C.F.R. § 236.1(c)(8).  However,

> the BIA . . . adopted that standard for section 1226(a) bond hearings before
> an IJ. . . .  *See Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112 (B.I.A. 1999);
> *Matter of Guerra*, 24 I. & N. Dec. [37, 38 (B.I.A. 2006)].
>
> Accordingly, under current BIA precedent, a noncitizen detained under
> section 1226(a) must demonstrate "to the satisfaction of the Immigration
> Judge that he or she merits release on bond," *Matter of Guerra*, 24 I. & N.
> Dec. at 40, "even though section [1226(a)] does not explicitly contain such a
> requirement."  *Matter of Adeniji*, 22 I. & N. Dec. at 1113.  To do so, the
> noncitizen must prove that he or she is neither a danger to the community nor
> a flight risk. *See, e.g., Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 (B.I.A.
> 2020).  In contrast, the government "need not show anything to justify
> incarceration for the pendency of removal proceedings, no matter the length
> of those proceedings." *Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir.
> 2020).

*Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021).  Thus, the bond hearings as

currently administered provide non-citizens with some procedural protections against a

deprivation of liberty.  But those protections must be assessed against the requirements of

the Constitution.

### 2.    Requiring the Government To Justify Detention at the Bond Hearing Reduces the Risk of an Ongoing and Erroneous Deprivation of Petitioner's Liberty.

Neither the Supreme Court nor the Tenth Circuit has directly addressed whether

requiring the non-citizen to bear the burden of proving that he is neither a danger to the

community nor a flight risk at a § 1226(a) bond hearing violates due process.  There is a

split among the Circuits that have considered the question. The First Circuit has squarely held that at a § 1226(a) bond hearing, due process requires the government to bear the burden of proving the alien's dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 39-40 (1st Cir. 2021). The Second Circuit has similarly held that when an alien is subject to prolonged incarceration under § 1226(a), the appropriate remedy is a bond hearing at which the government bears the burden of proving dangerousness or flight risk by clear and convincing evidence. *Velasco Lopez v. Decker*, 978 F.3d 842, 855-57 (2d Cir. 2020). In contrast, the Ninth Circuit has held that due process does not require the government to bear the burden of proving dangerousness or flight risk when a non-citizen has been "subject to § 1226(a) and its bond determination processes from the onset of his detention." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1211-12 (9th Cir. 2022). The Fourth Circuit is substantially in accord. *See Miranda v. Garland*, 34 F.4th 338, 366 (4th Cir. 2022) (concluding "the current procedures used for detention under § 1226(a) satisfy due process" and thus burden shifting was not required).

The undersigned recommends that this Court follow the thorough and well-reasoned analyses of the First and Second Circuits, both of which evaluated the procedures for § 1226(a) bond hearings under the Supreme Court's three-factor balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The *Mathews* factors aid courts in determining whether procedural protections meet the Constitutional requirements of due process. The undersigned agrees that all three *Mathews* factors support affording Petitioner a bond

hearing at which the Government, rather than the non-citizen, bears the burden of proof of establishing risk of flight and dangerousness.

The first *Mathews* factor is "the private interest that will be affected."  424 U.S. at 335.  Here, "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty" interest in the Fifth Amendment's Due Process Clause.  *Zadvydas*, 533 U.S. at 687-88.  "In our society liberty is the norm, and detention . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Second Circuit has emphasized that for a non-citizen subject to § 1226(a) (as opposed to § 1226(c)), immigration detention was "not the result of a criminal adjudication," but "he was held alongside criminally charged defendants and those serving criminal sentences. The deprivation he experienced while incarcerated was, on any calculus, substantial. He was locked up in jail. He could not maintain employment or see his family or friends or others outside normal visiting hours. The use of a cell phone was prohibited, and he had no access to the internet or email and limited access to the telephone."  *Velasco Lopez*, 978 F.3d at 851-52 (internal citation omitted).  *See also Hernandez-Lara*, 10 F.4th at 28 ("Hernandez was incarcerated alongside criminal inmates at the Strafford County Jail for over ten months. During that time, she was separated from her fiancé and unable to maintain her employment.  But for the relief ordered in this action, she would still be incarcerated more than two years after the jailor first locked the door behind her. There is no question that Hernandez suffered a substantial deprivation of liberty.") (internal citation omitted).  Thus, the first factor weighs heavily in favor of

13

procedures that carefully protect Petitioner's substantial interest in being free from quasi-criminal detention.

The second *Mathews* factor is "the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  424 U.S. at 335.   "Procedural due process rules are shaped by the risk of error inherent in the truth-finding process."  *Velasco Lopez*, 978 F.3d at 852 (citing *Mathews*, 424 U.S. at 344).  The First Circuit observed five reasons that "a detainee often starts out behind the eight ball in a bond proceeding, and the opportunities for prejudicial error abound" due to the way that § 1226(a) hearings are conducted under current BIA precedent:

> [1] noncitizens have no right to be provided with counsel in immigration proceedings and very often cannot obtain counsel on their own, particularly if they are detained;
>
> [2] detained individuals will likely experience difficulty in gathering evidence on their own behalf;
>
> [3] noncitizens subject to immigration detention often lack full proficiency in English;
>
> [4] immigration law and procedures and the particular preferences of individual IJs are likely much better known to government representatives than to detainees; and
>
> [5] proving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern.

*Hernandez-Lara*, 10 F.4th at 30-31 (citation modified); *see also Velasco Lopez*, 978 F.3d at 853 (observing that the ability of a detained non-citizen to obtain evidence for the bond hearing is constrained, especially compared to the "substantial resources" of the

government in the form of "computerized access to numerous databases and to information collected by DHS, DOJ, and the FBI, as well as information in the hands of state and local authorities . . . [and] broad regulatory authority to obtain it"). Thus, the second factor weighs heavily in favor of requiring substitute procedures that would protect Petitioner from the risk of the erroneous deprivation of his liberty, such as shifting the burden of proof from the non-citizen to the Government.

The final *Mathews* factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. "The prompt execution of removal orders is a legitimate governmental interest, which detention may facilitate." *Hernandez-Lara*, 10 F.4th at 32. However, the government has no legitimate interest "in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight[,] [and] . . . shifting the burden of proof to the Government to justify continued detention promotes the Government's interest . . . in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854. Indeed, "limiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention." *See Hernandez-Lara*, 10 F.4th at 33 (also noting the "substantial societal costs" of unnecessary detention, which "separates families and removes from the community breadwinners, caregivers, parents, siblings and employees"). "In short, given the risk that the current procedures lead to many instances of needless detention, entailing substantial social and financial costs, the public interest in placing the burden of proof on the detainee

15

is uncertain at best, and may well be negative." *Id.* Thus, the third factor also supports shifting the burden of proof to the government.

"In sum, the balance of the *Mathews* factors weighs in favor of [Petitioner]: The private interest affected is commanding; the risk of error from placing the burden of proof on the noncitizen is substantial; and the countervailing governmental interest is comparatively slight." *Id.* (citation modified).

Multiple district judges in this Circuit have come to the same conclusion. *See, e.g.*, *Requejo Roman*, 816 F. Supp. 3d at 1284 (Judge Urias considering the *Mathews* factors, and concluding that "due process requires that [petitioner] be provided a bond hearing at which the Government bear the burden of proving that Petitioner is not a flight risk or a danger to the community."); *Mieles-Parraga v. Bondi*, No. 2:26-CV-00646-KG-JHR, 2026 WL 776489, at *2 (D.N.M. Mar. 19, 2026) (Chief Judge Gonzales utilizing same analysis); *Lopez-Romero v. Lyons*, No. 2:25-CV-01113-MIS-JHR, 2026 WL 92873, at *1 (D.N.M. Jan. 13, 2026) (Judge Strickland utilizing same analysis); *Abanil v. Baltazar*, No. 25-CV-4029-WJM-STV, 2026 WL 100587, at *8 (D. Colo. Jan. 14, 2026) (finding that in the District of Colorado, "the weight of authority. . . is clear: it is the Government's burden to justify a noncitizen's continued detention at a bond hearing") (collecting cases); *Peña Becerra v. Sparks*, No. 2:26-CV-00212-JNP-DBP, 2026 WL 915439, at *7 (D. Utah Apr. 3, 2026) (finding petitioner met his burden to show a deprivation of his rights by his unlawful detention, ordering petitioner's release, and ordering that if respondents "seek to re-detain him, they must provide him with notice and a pre-deprivation hearing, in which

16

the government bears the burden of establishing by clear and convincing evidence that [he] is a flight risk or danger to the community").

The undersigned recommends this Court join these courts and order that Petitioner be provided a bond hearing at which the Government bears the burden of proof to justify detention by showing he is a risk of flight or danger to the community.

### 3. The Government Should Be Required To Establish Flight and/or Dangerousness By Clear and Convincing Evidence.

Part and parcel of considering who bears the burden of proof is a determination of which standard of proof should apply.

> The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication. The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

*Addington v. Texas*, 441 U.S. 418, 423 (1979) (citation modified). "The Supreme Court has consistently held the Government to a standard of proof higher than a preponderance of the evidence where liberty is at stake, and has reaffirmed the clear and convincing standard for various types of civil detention." *Velasco Lopez*, 978 F.3d at 856 (citing *Addington*, 441 U.S. at 426, 432-33 (upholding the clear and convincing standard for civil confinement of individuals with severe mental illnesses); *Salerno*, 481 U.S. at 751 (noting that pretrial detention is permitted "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identifiable and articulable threat to an individual or the community"); *Foucha v. Louisiana*, 504 U.S. 71, 75-76 (1992) (requiring the same standard for involuntary civil commitment); *United States v. Comstock*, 560 U.S. 126, 130-

31 (2010) (noting the same standard in upholding the constitutionality of a federal statute which permits continued confinement of a mentally ill, sexually dangerous prisoner beyond a date that the prisoner would otherwise be released). *But see Hernandez-Lara*, 10 F.4th at 41 (holding that "due process requires the government to either (1) prove by clear and convincing evidence that [the non-citizen] poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk").

District courts in this Circuit have adopted the clear-and-convincing-evidence standard when shifting the burden to the government for § 1226(a) bond hearings. *See e.g.*, *Martinez Escobar v. Baltazar*, No. 26-cv-296-NYW, 2026 WL 503313, at *5 (D. Colo. Feb. 24, 2026) (collecting cases in District of Colorado imposing clear and convincing standard and imposing same); *Requejo Roman*, 816 F. Supp. 3d at 1284 ("[T]he standard of proof the Government must meet is one of clear and convincing evidence.") (citation modified).

### 4.    Conclusion

Petitioner's rights under § 1226(a) and the Due Process Clause have been violated by his unlawful detention without the opportunity for a bond hearing. This Court can implement its flexible habeas jurisdiction to protect him from further erroneous deprivation of his fundamental liberty interest by providing adequate procedural protections. A bond hearing at which the Government bears the burden of proof to establish flight risk and/or dangerousness by clear and convincing evidence is an appropriate remedy.

18

## VI.    Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition (Doc. 1) be **GRANTED in part**.  The undersigned recommends that the Court order Respondents to provide Petitioner an individualized bond hearing before a neutral Immigration Judge within 7 days of the judgment in this matter, or else release him from custody.  It is recommended that the Court order that at the bond hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk and/or a danger to the community in order to justify continued detention.  The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within ten days of the Court's order.

**The Court advises the parties of their right to object to this Report and Recommendation by June 9, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[6]  The Court advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[6] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations.  *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

**ENTERED** this 2nd day of June, 2026.

_Amanda L. Maxfield_
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

20